## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **KENNETH BALL**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.  3:17-cv-00150 |
| | ) | |
| **SPECIFIED CREDIT ASSOCIATION** | ) | |
| **1, INC.,** | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

### Introduction and Jurisdiction

1.      This is an action for statutory damages brought by an individual consumer for violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* (the "FDCPA").

2.      This Court has jurisdiction of the FDCPA claim under 15 U.S.C. § 1692k(d).

3.      Venue is appropriate in this Court because Plaintiff resides in Centreville, St. Clair County, Illinois.

### Parties

4.      Plaintiff is a natural person currently residing in Centreville, Illinois.  Plaintiff is a consumer within the meaning of the FDCPA. The alleged debt owed arises out of consumer, family and/or household transactions.

5.      Defendant Specified Credit Associate 1, Inc. is a Missouri corporation with its principal place of business in Maryland Heights, Missouri doing business as Specified Credit Association Inc. The principal business purpose of Defendant is the collection of debts in Missouri and nationwide, and Defendant regularly attempts to collect alleged debts owed.

6.      Defendant is engaged in the collection of debts from consumers using the mail and telephone in Illinois. Defendant is a "debt collector" as defined by the FDCPA in 15 U.S.C. § 1692a(6).

**Facts**

7.      Defendant's collection activity of which Plaintiff complains occurred within the twelve (12) months preceding the initiation of this action.

8.      Plaintiff's alleged debt is comprised of supposed deficiencies from a lease involving 1203 Upper Cahokia, Cahokia, Illinois 62206. The amount was supposedly owed to Robinson Realty LLC, an Illinois LLC that does business of Robinson Realty Solutions. Robinson Realty Solutions in turn claimed to be an assignee of Lewis Investments, Inc.

9.      On or around October 24, 2016, Connie Sarget, a representative of Defendant, attempted to collect on the alleged debt owed by Plaintiff.

10.     Because this was the first time that Defendant contacted Plaintiff about this debt, Plaintiff was still within the 30-day period in which he could exercise his dispute and verification rights. Plaintiff disputed that he owed the debt and requested validation of the debt.

11.     During the phone conversation, after Plaintiff had orally disputed the debt, Defendant attempted to collect the alleged debt by soliciting payment. Such attempts made by Defendant ignored and overshadowed Plaintiff's rights to dispute, validate and verify the debt.

12.     Plaintiff waited for multiple months to receive any verification of the alleged debt, but he never received any further written verification from Defendant.

13.     Instead, on November 28, 2016, Ms. Sarget called back again on behalf of Defendant. She did not provide the mini-Miranda warning required by 15 U.S.C. § 1692e(11) that

Defendant is a debt collector, is attempting to collect a debt and that any information obtained will be used for that purpose.

14.     Plaintiff again orally disputed that he owed the debt, but Defendant demanded more documentation from Plaintiff.

15.     Three weeks later, on December 19, 2016, even though Defendant still had not sent any verification of the debt to Plaintiff and even though Plaintiff had orally disputed the debt, Ms. Sarget called back again on behalf of Defendant in an attempt to collect the alleged debt. Once again, she did not provide the mini-Miranda warning required by 15 U.S.C. § 1692e(11).

16.     Again, Plaintiff orally disputed the debt and asked for something to be sent to him in writing.

17.     Defendant told Plaintiff that he could dispute the debt, but this debt will still remain over his head, suggesting that disputing the debt would do nothing to help him. She then proceeded with attempts to collect the debt.

18.     Such attempts made by Defendant ignored and overshadowed Plaintiff's rights to dispute, validate and verify the debt.

19.     Defendant's conduct caused Plaintiff to believe that he could not exercise his Section 1692g rights.

20.     Furthermore, Defendant stated that the Robinson Realty Solutions had put Plaintiff on a "rental lockout". She claimed that this was a database that landlords use before leasing. She stated that this meant that any time that Plaintiff attempted to get an apartment, this debt would show up, and he would be unable to get an apartment.

21.     This statement by Defendant was not necessarily true. Even if Plaintiff had been placed on a "rental lockout" list, Defendant cannot guarantee that other landlords will not rent to

Plaintiff because other landlords may not care about the rental lockout, and such landlords may not even view this supposed database.

22.     Once again, Plaintiff insisted that something be sent in writing to him regarding the debt. Ms. Sarget said that something would be sent, and she asked for Plaintiff's address. She discovered that Defendant had the wrong address on file, and then Plaintiff provided her with the correct address.

23.     Plaintiff asked if he would be sued. Defendant said yes, that is possible, because Defendant has attorneys on retainer.

24.     This threat of suit was not completely honest either. Defendant is a collection agency and cannot threaten a perceived legal action Defendant actually can and will file suit on its own. Just because Defendant has an attorney on retainer does not mean that attorney will be willing to sue for the Defendant; the decision to sue would be up to the lawyers.

25.     After impliedly threatening Plaintiff with a lawsuit if he did not pay, Defendant then asked Plaintiff where he works. Ms. Sarget informed Plaintiff that she could get him a one-time settlement offer, and Plaintiff shared where he worked with her.

26.     Defendant asked for $2,730.00. Plaintiff told Defendant that he considered that amount absurd and insisted to know how that amount was calculated, again disputing the amount.

27.     Ms. Sarget then admitted, after reviewing the file, that these charges were not adding up. She reiterated that what the client says is owed and what is reported in the file was not adding up at all. Indeed, she stated that she was trying to make heads or tails of what was in Defendant's system, but she was unable to do so.

28.     Plaintiff again asked for an itemized amount of damages and proof that he moved out on the date asserted by Defendant, and Ms. Sarget said that she would do so.

- 4 -

29.   After stating that she did not understand the numbers at all and wanted to speak to her manager, Ms. Sarget ended the call.

30.   December 28, 2016, more than a week later and more than a month since Plaintiff had originally disputed the alleged debt, nothing had been sent to Plaintiff.

31.   That day, Ms. Sarget called Plaintiff again on behalf of Defendant. Once again, she did not provide the mini-Miranda warning required by 15 U.S.C. § 1692e(11).

32.   Plaintiff reminded Ms. Sarget that at the end of their last phone call, he had requested information in writing regarding how much was owed and what for as well as proof that he had moved out in July 2015. He also said that he had wanted information about the rental lockout list on which Robinson Realty Solutions had supposedly placed him.

33.   Ms. Sarget did not dispute that her company did not previously send the paperwork. She just reiterated again that yes, she can send the other paperwork to Plaintiff. She then confirmed his address again. She said that she would get him all of his expenses, move out dates, and everything else. She promised to have it mailed to him.

34.   However, Ms. Sarget stated that she could not send anything to Plaintiff pertaining to him being on a rental lockout list because, she claimed, it had nothing to do with Defendant. This was not a true statement because Defendant was using the threat of continued use of this supposed rental lockout list as a means to collect the debt.

35.   Plaintiff continued to dispute the debt, stating that he had a rent-to-own agreement with Lewis Investments, Inc. before Robinson Realty Solutions purchased the property.

36.   Ms. Sarget, on behalf of Defendant, admitted on the phone that the old owner did breach his old contract with Plaintiff, but she stated that the breach of contract had nothing to do with Robinson Realty Solutions.

- 5 -

37.     She acknowledged that Plaintiff was renting to buy. She said that she understood he was going to own the house in just a matter of months. However, she stated, since Robinson Realty bought the house before his rent-to-own contract was completed, it was legally allowed to ignore the rent-to-own contract.

38.     First of all, Ms. Sarget should not have been declaring complicated legal theories to Plaintiff as if they were fact. Furthermore, her statement is not necessarily true. New owners cannot necessarily ignore rent-to-own agreements that tenants had with previous owners simply because the old owner purports to sell the property to the new owner.

39.     She again reiterated that $2,730.00 was due. When Plaintiff objected that the original demand was around $900.00, Ms. Sarget said that her line is recorded on each and every phone call, and that $900.00 was never demanded by Defendant. In fact, contrary to Ms. Sarget's statement, a different agent of Defendant actually had demanded approximately $900.00 from Plaintiff in the past.

40.     Defendant, through Ms. Sarget, acknowledged that Plaintiff was very confused. She again reiterated that when the house traded hands, the arrangement with the old owner no longer had to be honored by the new owner. She appeared to accept that Plaintiff was also out a lot of additional money with the old owner, but she stated that that did not matter given her legal analysis.

41.     Ms. Sarget then provided Plaintiff with legal advice, stating that Plaintiff should have gotten an attorney with the old owner, and that he should not have relied upon the word of the former owner. She said that he had nothing to stand on, legally. She said that she understood that he could not have afforded an attorney, but the fact that he did not use an attorney is what allowed this supposed forfeiture of his rights to happen, legally speaking.

- 6 -

42.     As a means of then further justifying the debt, Ms. Sarget asserted that Plaintiff did not give 30 days' notice before vacating the property. When Plaintiff insisted that he did not know about such a requirement, Ms. Sarget represented to Plaintiff that, as a matter of law, when you rent a property, a tenant absolutely has to provide 30-days' notice before vacating.

43.     Plaintiff then raised the fact that he provided notice once he was threatened by Robinson Realty Company along with other mitigating circumstances that would excuse any failure to give notice. Once more, Ms. Sarget expressed her legal opinion, saying that it was too late for Plaintiff to give notice that he was leaving once he was threatened with the eviction notice, in addition to other mitigating facts in his favor.

44.     Once again, Ms. Sarget's statement of law, presented as fact to Plaintiff, was incorrect and deceptive.

45.     When Plaintiff also objected that he was told that he would be good on the rent if he did exactly what he ended up doing, Ms. Sarget told him that he should have gotten that in writing.

46.     Ms. Sarget then went on to state that absolutely everything has to be in writing for there to be any legal consequences.

47.     Plaintiff went on to say that he believes he made payment with his credit card, but Ms. Sarget demanded his payment record. She shifted the burden of proof on the debt to him, saying that the debt stays at $2,730.00 even if Defendant or Robinson Realty Solutions have records indicating that Plaintiff paid it. This statement ignores Plaintiff's right to dispute his debts and demand records of that debt from Defendant. Ms. Sarget repeated this assertion multiple times.

48.     Ms. Sarget said the last payment was in August of 2014. Plaintiff disputed that assertion as incredible. Undeterred, Ms. Sarget again insisted that Plaintiff would have to prove

any payments he made. She said that was so even though she admitted that Defendant had paperwork related to payment and could tell Plaintiff if he had needed to make more payments.

49.    All of these misrepresentations regarding the law were directly connected to the enforceability of the debt, making them material.

50.    After continuing to attempt to collect the debt by insisting that Plaintiff should get money from his parents, Defendant then asked Plaintiff to confirm that his employer was Loan Express.

51.    Even though Plaintiff continued to dispute the debt and provided his cell phone number to Defendant, Defendant then called Plaintiff multiple times at work on his work number.

52.    Despite Plaintiff having had advised Defendant that he could not accept personal calls at work, Defendant called on January 10, 2017 and left messages on his work phone.

53.    After Plaintiff did not answer the first time on January 10, 2017, Defendant immediately then called his work phone again.

54.    Still not satisfied, upon information and belief, Defendant called again on January 20, 2017 while Plaintiff was at work around 1:30 pm on the work phone. This time, Plaintiff's manager Nakesha Smith answered the phone.

55.    Defendant represented to Ms. Smith that the one calling was Dave Stone and that he knew Plaintiff, even though Plaintiff did not know him.

56.    Plaintiff picked up the phone and asked if he could help "Dave Stone".

57.    Defendant then said to someone else on its end of the line: "Yeah, he is there.", and then Defendant's agent hung up the phone.

58.    Defendant's collection attempts, harassment at work and misrepresentations have caused Plaintiff to incur actual damages, attorney fees, denial of credit and garden variety

emotional distress in the form of frustration and anxiety, among other forms of garden variety emotional distress.

59.     As of the date of filing, no validation has been sent to Plaintiff despite Ms. Sarget's multiple promises that Defendant would do so.

### Defendant's Violation of the FDCPA

60.     Plaintiff realleges and incorporates by reference the above paragraphs.

61.     Defendant regularly attempts to collect consumer debts asserted to be due to another and, at all relevant times herein, was a "debt collector" as defined by 15 U.S.C. §1692a(6).

62.     A single action on the part of a debt collector can violate multiple sections of the FDCPA.

63.     In its attempts to collect the alleged debt from Plaintiff, Defendant has committed violations of the FDCPA, 15 U.S.C. §1692, *et seq.,* including, but not limited to the following:

   a.   Using false, deceptive, or misleading representation or means in connection with the collection of the alleged debt in violation of 15 U.S.C §1692e;

   b.   Overshadowing Plaintiff's dispute, validation, and verification rights in violation of 15 U.S.C. §1692g;

   c.   Continuing to collect on the alleged debt prior to providing verification and refusing to provide validation of the debt in violation of 15 U.S.C. §1692g;

   d.   Attempting to collect amounts not permitted by law or expressly authorized by the agreement creating the debt in violation of 15 U.S.C. §1692f;

   e.   Using unconscionable means to collect a debt in violation of 15 U.S.C. §1692f;

   f.   Engaging in harassment and abuse in violation of 5 U.S.C. §1692d; and

g.  Engaging in prohibited practices when communicating with third parties in violation of 5 U.S.C. §1692c(b).

WHEREFORE, Plaintiff prays this honorable Court to enter a judgment against Defendant for:

A.  Declaratory judgment that Defendant's conduct violated the FDCPA;

B.  Actual damages, including damages for garden variety emotional distress;

C.  Statutory damages, costs, litigation expenses and attorney's fees pursuant to 15 U.S.C. §1692(k); and

D.  For such other relief as the Court may deem just and proper.

### Demand for Jury Trial

Plaintiff requests a trial by jury, in the United States District Court for the Southern District of Illinois on all counts and allegations of wrongful conduct alleged in this Complaint.

Respectfully submitted,

**DONNER APPLEWHITE, ATTORNEYS AT LAW**

By:  */s/ Thomas R. Applewhite*
    Thomas R. Applewhite
    1108 Olive Street, Suite 200
    St. Louis, Missouri 63101
    Phone:      (314) 240-5351
    Facsimile:  (888) 785-4461
    Email:      tom.applewhite@da-lawfirm.com

*Attorneys for Plaintiff*